## CONCLUSION

Upon due consideration of the court file in this matter, the court finds that respondent has stated that he freely, knowingly, and voluntarily admits that he does not contest the allegations being made against him. The court accepts respondent's voluntary surrender of his license to practice law, finds that respondent should be disbarred, and hereby orders him disbarred from the practice of law in the State of Nebraska, effective immediately. Respondent shall forthwith comply with all terms of Neb. Ct. R. § 3-316 of the disciplinary rules, and upon failure to do so, he shall be subject to punishment for contempt of this court. Accordingly, respondent is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012) and Neb. Ct. R. §§ 3-310(P) (rev. 2014) and 3-323 of the disciplinary rules within 60 days after an order imposing costs and expenses, if any, is entered by the court.

Judgment of disbarment.

---

Brian David Steffy, appellant, v.
Randi Jo Steffy, now known as
Randi Jo Stenson, appellee.
___ N.W.2d ___

Filed February 28, 2014.    No. S-12-082.

1. **Rules of the Supreme Court: Appeal and Error.** Parties who wish to secure appellate review of their claims must abide by the rules of the Nebraska Supreme Court. Any party who fails to properly identify and present its claim does so at its own peril.

2. ____: ____. Neb. Ct. R. App. P. § 2-109(D)(1)(d), (e), and (f) (rev. 2008) requires a separate section for assignments of error, designated as such by a heading, and also requires that the section be located after a statement of the case and before a list of controlling propositions of law.

3. ____: ____. Assignments of error consisting of headings or subparts of the argument section do not comply with the mandate of Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2008).

4. ____: ____. When a party fails to follow the rules of the Nebraska Supreme Court, an appellate court may proceed as though the party had failed to file a brief or, alternatively, may examine the proceedings for plain error.

5. **Appeal and Error.** The decision to proceed on plain error is at the discretion of the appellate court.

6. \_\_\_\_. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

7. **Evidence: Appeal and Error.** Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

8. **Child Custody.** Child removal determinations are matters initially entrusted to the discretion of the trial judge, and the trial judge's determination is to be given deference.

9. \_\_\_\_. In order to prevail on a motion to remove a minor child to another jurisdiction, the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the state. After clearing that threshold, the custodial parent must next demonstrate that it is in the child's best interests to continue living with him or her.

10. **Child Custody: Visitation.** The purpose of requiring a legitimate reason for leaving the state in a motion to remove a minor child to another jurisdiction is to prevent the custodial parent from relocating the child because of an ulterior motive, such as frustrating the noncustodial parent's visitation rights.

11. **Child Custody.** In considering a motion to remove a minor child to another jurisdiction, the paramount consideration is whether the proposed move is in the best interests of the child.

12. \_\_\_\_. In determining the potential that the removal to another jurisdiction holds for enhancing the quality of life of the parent seeking removal and of the children, a court should consider the following factors: (1) the emotional, physical, and developmental needs of the children; (2) the children's opinion or preference as to where to live; (3) the extent to which the relocating parent's income or employment will be enhanced; (4) the degree to which housing or living conditions would be improved; (5) the existence of educational advantages; (6) the quality of the relationship between the children and each parent; (7) the strength of the children's ties to the present community and extended family there; and (8) the likelihood that allowing or denying the move would antagonize hostilities between the two parties. Depending on the circumstances of a particular case, any one factor or combination of factors may be variously weighted.

13. **Child Custody: Visitation.** The impact the move will have on contact between the child and the noncustodial parent must be viewed in light of the court's ability to devise reasonable visitation arrangements. A reasonable visitation schedule is one that provides a satisfactory basis for preserving and fostering a child's relationship with the noncustodial parent.

Petition for further review from the Court of Appeals, Irwin, Pirtle, and Riedmann, Judges, on appeal thereto from the District Court for Cass County, Randall L. Rehmeier, Judge.

Judgment of Court of Appeals reversed, and cause remanded with directions.

Karen S. Nelson and Liam K. Meehan, of Schirber & Wagner, L.L.P., for appellant.

Steven M. Delaney, Darin L. Whitmer, and A. Bree Swoboda, Senior Certified Law Student, of Reagan, Melton & Delaney, L.L.P., for appellee.

HEAVICAN, C.J., CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

MCCORMACK, J.

## NATURE OF CASE

This case is before us on further review of the decision of the Nebraska Court of Appeals.[1] Brian David Steffy has primary custody of his son, Jakob Steffy, pursuant to a divorce decree entered in the Cass County District Court. Brian requested permission from the district court to remove Jakob from the State of Nebraska and move to the State of Texas. Jakob's mother, Randi Jo Steffy, now known as Randi Jo Stenson, resisted. After a bench trial, the district court denied the request, finding that Brian had failed to meet his burden to show that he had a legitimate reason to relocate and that the relocation was in the best interests of Jakob. Brian appealed. His appellate brief failed to properly set forth assignments of error, but the Court of Appeals found plain error and reversed the district court's decision on removal.[2] We granted Randi's petition for further review, and we reverse the decision of the Court of Appeals.

## BACKGROUND

Brian and Randi were married, and Jakob was born in August 2001. In 2003, Brian, Randi, and Jakob relocated to Plattsmouth, Nebraska, when Randi, who is on active duty military status in the U.S. Army, was assigned to Offutt Air

---

[1] *Steffy v. Steffy*, 20 Neb. App. 757, 832 N.W.2d 895 (2013).

[2] *Id*.

Force Base in Bellevue, Nebraska. Neither Randi nor Brian had immediate family in Nebraska.

In April 2008, the district court entered a decree of dissolution for Brian and Randi's marriage. The district court granted legal custody of Jakob to Brian with reasonable rights of visitation for Randi. Randi was ordered to pay child support.

Jakob lives in Brian's house in Plattsmouth. Brian also served in the military, and after retiring, Brian received a degree from Creighton University in elementary education and has his teaching certification for the State of Nebraska. Brian works as a substitute teacher for Bellevue Public Schools, earning between $125 and $140 per day. Brian has applied but has been unable to gain employment as a full-time teacher.

In April 2011, Brian married Sheri Steffy. Sheri and her children moved in with Brian and Jakob. Sheri is a certified teacher in the State of Nebraska and is a full-time first grade teacher for Bellevue Public Schools. Sheri is originally from Oklahoma.

Every other weekend and during the summer and holidays, Randi is granted visitation time with Jakob. At the time of the divorce, Randi was stationed in Fort Leavenworth, Kansas. Randi was then transferred to Fort Knox, Kentucky, when she voluntarily took a position as a colonel in the U.S. Army. When Randi exercises her rights of weekend visitation with Jakob, she flies by plane into Kansas City, Missouri, and picks Jakob up from Brian in Rock Port, Missouri. Randi and Jakob then stay with Randi's sister in Missouri. During extended breaks, Jakob will travel to Fort Knox to stay with Randi.

Jakob has an autism spectrum disorder. The disorder is a spectrum of related disabilities that are marked by communication difficulties, stereotypic behavior, and social difficulties.

To overcome his learning difficulties, Jakob receives an individualized education plan (IEP) at school. As part of this plan, Jakob receives a combination of general education, special education, and therapeutic work. This includes 12 to 15 hours a week of Applied Behavior Analysis (ABA) therapy. The purpose of ABA therapy is to change Jakob's behaviors by increasing appropriate behaviors and by decreasing the inappropriate behaviors. By all accounts, Jakob has progressed

"wonderfully" under the Plattsmouth School District's IEP for him. In order to maintain progress, similar services and therapies need to continue throughout his schooling.

In December 2010, Brian filed a complaint to modify the decree of dissolution of marriage and the parenting plan. In the complaint, Brian requested sole legal care, custody, and control of Jakob; an increase in child support; and to be allowed to remove Jakob from the State of Nebraska to the State of Texas. Randi resisted the move.

On August 25, 2011, a bench trial was held. Brian's first witness was Keery Wolf. Wolf is a board-certified behavioral analyst with a master's degree in early childhood special education. Her company, Wolf Behavioral Consulting, provided services to children with autism and other related disabilities. Wolf was the supervisor for Jakob's applied behavior analysis program at school.

At the time of trial, Wolf had contracted Jakob's services out to another company started by a former employee. Wolf is the only board-certified behavioral analyst that works with autistic children in schools in the eastern Nebraska area, and Wolf Behavioral Consulting was moving in a direction that would end those services. However, she testified that her former employee was working toward her board certification to take over those services.

Wolf testified that based on her research, there are more ABA services available to Jakob in Texas than in Nebraska. She testified that the ABA services do not need to be through the same provider but that the quality of services needs to be maintained. Wolf testified that Jakob's ABA needs could be met by the services provided in Texas.

Sheri testified that she and Brian wanted to move the family to the Dallas-Fort Worth area in Texas for better career opportunities. She testified that she has begun the job search process in Texas, but had not yet applied for a position. She believed it would be premature to apply for jobs if they did not have permission to remove Jakob from the State of Nebraska.

Brian testified that he wants to move to Texas because Texas offers better economic opportunities for his family and better ABA services for Jakob. Brian also has family in Texas. He

testified that if the move was allowed, he would continue to accommodate Randi's visitation rights because he understood the importance of Jakob's relationship with his mother.

Brian testified that the pay scale for teaching jobs was greater in Texas than in Nebraska. An exhibit was admitted containing the starting salary information for teachers with a bachelor's degree and no experience at the Coppell School District, Carrollton-Farmers School District, and the Irving Independent School District in the Dallas-Fort Worth area. The average pay for a new teacher is approximately $47,000 a year. In comparison, Brian testified that he was earning $125 to $140 per day and that if hired as a full-time teacher, he would be salaried at approximately $31,000 at Omaha, Bellevue, Plattsmouth, and Papillion, Nebraska, public schools.

Brian testified that he has researched the schools and services that are provided in Texas and compared them to Jakob's current school and services. Brian and Jakob have visited businesses offering ABA therapy in Texas. Brian testified there are a plethora of businesses offering ABA services. It is Brian's opinion that the academic, behavior, and therapeutic services are far superior in Texas than in Nebraska. Due to Wolf's changing her business model, Brian is also concerned about the continued availability of ABA services for Jakob in Nebraska.

Randi testified that she wants to diligently protect her visitation rights and that she does not want Jakob to be removed from Nebraska. She testified that it is her plan to move back to eastern Nebraska after she retires in 2 years from the Army. She conceded that if she were to receive another favorable assignment from the military, she may not retire.

Randi is concerned about Jakob's leaving Nebraska, because it may harm his development. She also expressed that she is worried that she will no longer be able to take Jakob to her sister's home in Missouri. If visiting Jakob in Texas, she would have to exercise her visitation in a hotel room and she is concerned that Jakob would be uncomfortable. She fears that such visitations may harm her relationship with Jakob.

The court also received the depositions of Jakob's teachers in Plattsmouth. The teachers generally described the learning

difficulties Jakob faces and the IEP that has been implemented
for him. They praised Brian for his involvement in Jakob's
education and development. In general, the teachers testified
that although change is difficult for Jakob, change is inevitable
as he moves from grade school to middle school.

In its modification order, the district court increased the
child support obligations of Randi, but denied Brian's request
for sole legal custody and his request to remove Jakob from
the State of Nebraska to the State of Texas. On the issue of
removal, the district court found that Brian did not meet his
burden in establishing the threshold question of whether he had
a legitimate reason to move to Texas.

The district court also found that the move was not in the
best interests of Jakob, because the move would not enhance
the quality of Jakob's life. The district court stressed that
Brian's and Sheri's employment opportunities in Texas were
speculative. It found that there was no guarantee that a job
would be obtained or that such job would pay a higher salary.
The district court further found that Jakob's therapeutic and
developmental needs were being met in Plattsmouth and that
the evidence did not establish superior therapeutic and devel-
opmental services in Texas.

Furthermore, the district court noted that the move could be
difficult for Jakob and that the move threatened to antagonize
Randi and Brian's relationship. The district court also indicated
that the move could affect Randi's visitation with Jakob. After
finding that Jakob's quality of life would not be enhanced and
finding that the move could affect Randi's visitation, the dis-
trict court denied removal because it was not in the best inter-
ests of Jakob. Brian appealed the order.

The Court of Appeals found that Brian's appellate brief
did not comply with Neb. Ct. R. App. P. § 2-109(D)(1) (rev.
2008).[3] The Court of Appeals, under a plain error standard of
review, reevaluated all the evidence of the record and con-
cluded that the district court had plainly erred in its determina-
tions that Brian did not have a legitimate reason and that the
move to Texas was not in Jakob's best interests. Specifically,

---

[3] *Id.*

in its best interests analysis, the Court of Appeals found that Brian and Randi were not motivated by an effort to frustrate or manipulate each other, that the move would increase Jakob's quality of life, and that the move would not greatly impact Jakob's relationship with Randi.

Finding that there was a legitimate reason for removal and that the removal was in Jakob's best interests, the Court of Appeals held that the district court's decision deprived Brian of a just result and was, therefore, plain error. The Court of Appeals reversed the district court's decision on the removal issue and affirmed on all other grounds. We granted Randi's petition for further review.

## ASSIGNMENTS OF ERROR

In her petition for review, Randi assigns that the Court of Appeals erred in (1) applying the plain error standard, (2) reweighing all of the evidence, and (3) reversing the decision of the district court in regard to removal of Jakob from the State of Nebraska.

## STANDARD OF REVIEW

[1] Parties who wish to secure appellate review of their claims must abide by the rules of the Nebraska Supreme Court.[4] Any party who fails to properly identify and present its claim does so at its own peril.[5]

[2,3] Brian's appellate brief to the Court of Appeals lists its assignments of error under the argument section instead of under a separate heading. Section 2-109(D)(1)(d), (e), and (f) requires a separate section for assignments of error, designated as such by a heading, and also requires that the section be located after a statement of the case and before a list of controlling propositions of law. We have previously held that assignments of error consisting of headings or subparts of the argument section do not comply with the mandate of § 2-109(D)(1)(e).[6]

---

[4] *In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 708 N.W.2d 262 (2006).

[5] *Id*.

[6] *In re Interest of Jamyia M.*, 281 Neb. 964, 800 N.W.2d 259 (2011).

[4,5] In this situation, an appellate court may proceed as though Brian had failed to file a brief or, alternatively, may examine the proceedings for plain error.[7] The decision to proceed on plain error is at the discretion of the appellate court.[8]

[6] As did the Court of Appeals, we choose to review the record for plain error. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[9]

[7] Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[10]

## ANALYSIS

[8] In parental relocation cases, trial and appellate courts deal with the tension created by a mobile society and the problems associated with uprooting children from stable environments.[11] Courts are required to balance the noncustodial parent's desire to maintain their current involvement in the child's life with the custodial parent's chance to embark on a new or better life.[12] These issues are among the most difficult issues that courts face in postdivorce proceedings.[13] It is for this reason that such determinations are matters initially entrusted to the discretion of the trial judge, and the trial judge's determination is to be given deference.[14]

[9] In order to prevail on a motion to remove a minor child to another jurisdiction, the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the

---

[7] *Id.*

[8] See *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012).

[9] *Id.*; *Cesar C. v. Alicia L.*, 281 Neb. 979, 800 N.W.2d 249 (2011); *In re Interest of Jamyia M., supra* note 6.

[10] *Caniglia v. Caniglia*, 285 Neb. 930, 830 N.W.2d 207 (2013).

[11] *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999).

[12] *Id.*

[13] *Id.*

[14] *Id.*

state.[15] After clearing that threshold, the custodial parent must also demonstrate that it is in the child's best interests to continue living with him or her in the new location.[16]

[10] The purpose of requiring a legitimate reason is to prevent the custodial parent from relocating the child because of an ulterior motive, such as frustrating the noncustodial parent's visitation rights.[17] Absent such aggravating circumstances, we have repeatedly held that significant career enrichment is a legitimate reason for relocation in and of itself.[18]

[11] But the best interests of the child are paramount.[19] To determine whether removal to another jurisdiction is in the child's best interests, the trial court evaluates three considerations.[20]

The first consideration is each parent's motive for seeking or opposing the move.[21] The ultimate question for this consideration is whether either party has elected or resisted a removal in an effort to frustrate or manipulate the other party.[22]

[12] The second consideration is the potential that the move holds for enhancing the quality of life for the child and the custodial parent.[23] To determine quality of life, a court should consider the following factors: (1) the emotional, physical, and developmental needs of the children; (2) the children's opinion or preference as to where to live; (3) the extent to which the relocating parent's income or employment will be enhanced; (4) the degree to which housing or living conditions would be improved; (5) the existence of educational

---

[15] *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000).

[16] *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002).

[17] *Farnsworth v. Farnsworth, supra* note 11.

[18] See, *McLaughlin v. McLaughlin*, 264 Neb. 232, 647 N.W.2d 577 (2002); *Kalkowski v. Kalkowski, supra* note 15; *Farnsworth v. Farnsworth, supra* note 11.

[19] *Vogel v. Vogel, supra* note 16.

[20] *McLaughlin v. McLaughlin, supra* note 18.

[21] See *id*.

[22] *Id*.

[23] *Id*.

advantages; (6) the quality of the relationship between the children and each parent; (7) the strength of the children's ties to the present community and extended family there; and (8) the likelihood that allowing or denying the move would antagonize hostilities between the two parties.[24] Depending on the circumstances of a particular case, any one factor or combination of factors may be variously weighted.[25]

[13] The final consideration in the best interests analysis is the impact such a move will have on contact between the child and the noncustodial parent.[26] This effect must be viewed in light of the court's ability to devise a reasonable visitation arrangement that provides a satisfactory basis for preserving and fostering a child's relationship with the noncustodial parent.[27] The determination of reasonableness is to be made on a case-by-case basis.[28]

Here, we will not address the threshold question of whether Brian had a legitimate reason to relocate because our holding on best interests is dispositive. After reviewing the record, we hold that the district court did not plainly err in its determination that the move was not in Jakob's best interests.[29] Because the move was not in Jakob's best interests, Brian's motion to remove Jakob from Nebraska was properly denied.

The record supports the district court's finding that Brian had failed to prove that the move would enhance Jakob's quality of life. By all accounts, Jakob has progressed "wonderfully" with the ABA services and educational opportunities offered in Plattsmouth. Both Brian and Sheri have employment in Nebraska, and their income is sufficient to support their family. There is evidence that moving to Texas may harm Jakob's progress and that change can be very difficult for a child with autism. The district court also made a finding that

---

[24] *Id.*

[25] See *id.*

[26] *Id.*

[27] *Vogel v. Vogel, supra* note 16.

[28] *Id.*

[29] See *McLaughlin v. McLaughlin, supra* note 18.

the move would antagonize Brian and Randi's relationship. We must give weight to these findings of fact.[30]

The record also indicates that the move could harm Randi's relationship with Jakob. Randi testified that the relocation could preclude her from visiting with Jakob at her sister's home in Missouri. If visitation with Jakob took place in Texas, Randi would have to take Jakob to a hotel room instead of her sister's home where Jakob was comfortable. Additionally, Randi testified that she is planning on returning to Nebraska after her retirement from the Army, which was to occur 2 years from trial. If Jakob was removed from the State of Nebraska, she would lose the opportunity to more frequently visit with him after her retirement.

Although Brian testified that he is willing to accommodate Randi's visitation rights, the record indicates that the move will nevertheless have some effect on Randi's established visitation schedule and that it could have a more significant effect after her retirement.

From these findings, we conclude that the district court did not commit plain error in denying Brian's request to remove Jakob from the State of Nebraska. Both quality of life and impact on the noncustodial parent weigh against relocation, while the motives of each party are equally balanced. It is not our role as an appellate court under a plain error standard of review to substitute our opinion for an opinion of a district court that is reasonably supported by the record. Furthermore, we cannot conclude from the record that the factual findings of the district court were so unsubstantiated that any purported errors were injurious to the integrity, reputation, or fairness of the judicial process as to justify reversal on appeal under the plain error doctrine.

## CONCLUSION

The district court did not plainly err in determining that Brian failed to prove that moving from Nebraska to Texas was in Jakob's best interests. Therefore, we reverse the decision of the Court of Appeals and remand the cause to the Court of

---

[30] See *Caniglia v. Caniglia, supra* note 10.

Appeals with directions to reinstate the judgment of the district court as it pertains to Brian's request to remove Jakob from the State of Nebraska.

REVERSED AND REMANDED WITH DIRECTIONS.

WRIGHT, J., participating on briefs.

———————

EDWIN H. KUHNEL, APPELLANT,
v. BNSF RAILWAY COMPANY,
A CORPORATION, APPELLEE.
___ N.W.2d ___

Filed February 28, 2014.    No. S-12-296.

1. **Jury Instructions: Appeal and Error.** Whether a jury instruction is correct is a question of law, which an appellate court independently decides.

2. **Federal Acts: Railroads: Claims: Courts.** In disposing of a claim controlled by the Federal Employers' Liability Act, a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the act, but substantive issues concerning a claim under the act are determined by the provisions of the act and interpretive decisions of the federal courts construing the act.

3. **Jury Instructions: Appeal and Error.** Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error.

4. **Appeal and Error: Words and Phrases.** Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.

5. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Petition for further review from the Court of Appeals, INBODY, Chief Judge, and SIEVERS and RIEDMANN, Judges, on appeal thereto from the District Court for Scotts Bluff County, RANDALL L. LIPPSTREU, Judge. Judgment of Court of Appeals reversed.

Michael J. Wilson, of Schaefer Shapiro, L.L.P., and James L. Cox, of Brent Coon & Associates, for appellant.

Nichole S. Bogen and Thomas C. Sattler, of Sattler & Bogen, L.L.P., for appellee.