IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KLUCK V. KLUCK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JAMIE R. KLUCK, APPELLANT,

V.

ROBERT C. KLUCK, JR., APPELLEE.

Filed August 29, 2023.    No. A-22-723.

Appeal from the District Court for Colfax County: CHRISTINA M. MARROQUIN, Judge. Affirmed.

John H. Sohl for appellant.

Michael J. Tasset, of Johnson & Mock, P.C., L.L.O., for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Jamie R. Kluck appeals from the decree entered by the Colfax County District Court dissolving her marriage to Robert C. Kluck, Jr. Jamie focuses her appeal on the district court's division of two tracts of real estate that were purchased during the marriage by Robert for significantly less than fair market value. In the decree, the court determined that the difference between the purchase price and the fair market value of the land was a gift to Robert from his family and, as a result, was his separate property. Upon our review, we affirm.

## BACKGROUND

Jamie and Robert married in 2011. There were no children born of the marriage. Prior to the parties' marriage, they entered into a valid prenuptial agreement. That agreement provided in

part that property acquired by either party during the marriage by gift or inheritance would be treated as premarital or separate property.

On March 22, 2021, Jamie filed a complaint for dissolution of marriage. In the complaint, she specifically requested that the district court equitably distribute the parties' assets and debts; award her temporary and permanent alimony; and order Robert to pay her attorney's fees. On April 21, Robert filed an answer and counterclaim, also seeking dissolution of the parties' marriage. Robert specifically requested that the district court equitably distribute the parties' assets and debts.

Trial was held on July 15, 2022. At trial, the major issues in contention were whether certain farmland acquired by Robert during the marriage was entirely marital property, or whether a portion of that land was Robert's separate property; the valuation of that farmland; and whether Jamie was entitled to any alimony. Jamie testified on her own behalf. Robert called his mother and a certified general appraiser to testify, in addition to testifying on his own behalf. We recount the testimony relevant to this appeal.

At the time of trial, Jamie was 41 years old. She obtained a bachelor's degree in human resources management around the time the parties were married in August 2011. Although she had been employed outside of the home throughout the parties' 11-year marriage, at the time of trial, she was unemployed and actively seeking a new job. She testified that she was paying her living expenses using credit cards and money loaned to her from her mother. She claimed that she had no access to any "joint monies" the parties earned during the marriage. In the month leading up to the trial, Jamie was charged with felony driving under the influence and leaving the scene of a property damage accident. She was released from jail after paying a bond, and was required to wear an alcohol monitoring device.

Jamie testified that in 2012, shortly after the parties' marriage, she and Robert purchased two parcels of real estate from Robert's mother, Joan Kluck. Jamie indicated that she and Robert were both involved in the conversations with Joan about the purchase of this property. Ultimately, they borrowed the money to pay the agreed upon purchase price and currently still owe "around $750,000" on that loan. Jamie understood that the property they purchased was worth more than the amount they paid. Jamie opined that the current value of the two properties totaled $2,975,000. Originally, Jamie testified that her name was on the deeds to the properties. However, after being shown those deeds by Robert's counsel, she agreed that her name did not appear thereon.

Robert was 42 years old at the time of trial. He was self-employed as a farmer throughout the parties' marriage and for some time before the marriage. He described farming as a "family business." Robert testified that Jamie was not involved much in the farming business during their marriage, outside of helping with some accounting.

Robert testified that during the course of the marriage, he purchased two parcels of real estate from his family. Robert explained that both of these parcels had been in his family for at least 100 years. According to Robert, Jamie was not involved in the negotiations for the purchase of the parcels. In fact, she was not considered by either Robert or Joan as a "buyer" and her name was not entered on the deeds.

As to the first parcel of real estate purchased by Robert, he indicated that it included 120 acres of land, the house in which the parties lived, various outbuildings, and grain bins. Robert testified that he paid $360,000 for this parcel, but he was aware that it was worth much more than

that at the time of the purchase. The deed for this first parcel lists Joan as the grantor of the land and Robert as the sole grantee.

As to the second parcel of land purchased by Robert, he indicated that he paid $275,000, but that it was worth much more. This second parcel was, apparently, previously owned by Robert's father's trust, as the deed lists Joan, Robert, and Robert's sister as successor trustees of Robert's father's trust and as the grantors of the land. Robert is the only grantee. Robert testified that he and his sister determined the purchase price for this land, understanding the true value of the land.

Robert explained that he obtained a loan to pay for the two parcels of land. This occurred after the parties' marriage. Robert appeared to acknowledge that a portion of the land's value, equal to the total purchase price for the two parcels, $635,000, constituted marital property. However, he argued that the difference between the purchase price and the actual value of the land should be set aside as his separate property because the land was a gift to him from his mother so that the land would stay in the family. Robert adduced testimony from a certified general appraiser to prove that the total value of the two parcels both at the time of Robert's purchase and at the time of the dissolution proceedings was $2,350,000. As such, Robert asked that $1,715,000 in the land's value be set aside as his separate property.

Robert also offered the testimony of Joan to corroborate his statement that Jamie was not a party to the purchase of the two parcels. Joan testified that prior to selling these parcels to Robert, she and Robert's father had owned the land. In fact, the land has been in her family for 100 years. Joan explained that she sold the parcels solely to Robert, not to Robert and Jamie. She also explained that she never intended to make a gift to Jamie as part of the transaction.

On September 22, 2022, the district court entered a decree dissolving the parties' marriage. In the decree, the court initially found by a preponderance of the evidence that "the parties' premarital agreement is not unconscionable and is otherwise valid and enforceable in all respects, having been entered into voluntarily and with the benefit of counsel by each party prior to the marriage." As to the farmland acquired by Robert during the marriage, the district court found that the purchase was made using marital funds and that, as a result, $635,000 of the total value of the farmland, which the district court indicated equated to the entirety of the purchase price, was marital property. The court adopted Robert's valuation of the farmland and found that the "evidence establishes by a preponderance that the difference between the purchase price and the equity in the farm[land] was a gift to Robert." As such, the court set aside the difference in value ($1,715,000) as Robert's separate property. The court indicated that its decision was supported by language in the parties' prenuptial agreement which indicated that a lifetime gift of property that remains titled to one party should remain separate property upon a dissolution of the marriage.

Robert was ultimately ordered to pay Jamie an equalization payment of $29,121. Neither party was awarded alimony and both parties were ordered to pay their own attorney fees.

Jamie appeals from the district court's decree of dissolution.

ASSIGNMENTS OF ERROR

In Jamie's replacement brief, she asserts that the district court committed four errors: (1) concluding that the premarital agreement required that a large portion of the farmland be awarded to Robert as his separate property; (2) finding that the farmland was Robert's separate property;

(3) finding that the value of the farmland was the same at the time of the trial and at the time of purchase; and (4) basing its findings on "facts not in evidence."

However, as pointed out by Robert in his brief to this court, Jamie's replacement brief does not fully comport with the appellate court briefing rules. First, Jamie did not separately number and paragraph her individual assignments of error as is required by Neb. Ct. R. App. P. § 2-109(D)(1)(e). Instead, Jamie's four assignments of error are set out in one large paragraph. Second, in the argument section of Jamie's replacement brief, she fails to present each assigned error separately as is required by § 2-109(D)(1)(i). Instead, Jamie discusses her arguments in one large section with no indication or headings to delineate which assignment of error she is addressing.

For the sake of completeness, we note that in her replacement brief, Jamie also failed to provide any discernible argument in support of her assertion that the court erred in finding that the value of the farmland was the same at the time of the trial and at the time of purchase. See *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020) (an alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

Parties who wish to secure appellate review of their claims must abide by the rules of the Nebraska Supreme Court. *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014). Any party who fails to properly identify and present its claim does so at its own peril. *Id*. When an appellant does not comply with the briefing rules, an appellate court may proceed as though the appellant failed to file a brief or, alternatively, may examine the proceedings for plain error. See *id*. The decision to proceed on plain error is at the discretion of the appellate court. *Id*. We elect to review the record for plain error.

STANDARD OF REVIEW

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Steffy v. Steffy, supra*.

Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

ANALYSIS

We have reviewed the entirety of the record and the district court's decree of dissolution for plain error and have found none. Because Jamie's brief to this court focused on the district court's division of the two real estate parcels purchased during the parties' marriage, we have also focused on this issue in our review. In the decree, the district court found that while the portion of the parcels represented by the actual purchase price paid constituted marital property, the additional value of those parcels were nonmarital in nature and should be awarded to Robert as his separate property. We can find no plain error in the district court's treatment of these two parcels.

The equitable property division in an action for the dissolution of marriage involves three steps: The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and

divide the net marital estate between the parties. *Nygren v. Nygren*, 14 Neb. App. 1, 704 N.W.2d 257 (2005). Here, the district court classified the two parcels purchased during the marriage as partially marital and partially nonmarital. The Supreme Court has held that any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023).

The district court found that Robert paid $635,000 for the two parcels when he purchased them shortly after the parties' marriage. According to both Jamie and Robert, Robert took out a loan in order to pay this purchase price. Presumably, payments were made on this loan during the marriage using marital funds. The district court found that $635,000 of the value of the two parcels constituted marital property. Neither party disputes this finding. However, Robert and Jamie also do not dispute that the value of these parcels was much more than the purchase price. Jamie opined that the parcels were valued at $2,975,000, while Robert offered expert testimony that the parcels were valued at $2,350,000.

Robert argued at trial that the difference between the purchase price and the value of the land was intended to be a gift to him from his family. The district court agreed, accepted Robert's valuation of the parcels, and found that $1,715,000 of the value of the parcels was Robert's separate property not subject to division.

At trial, Robert and his mother both testified that this land has been in their family for a very long time. In addition, Robert indicated that farming was his family's business. According to Robert, all of the parties to the sale of the parcels understood that Robert was receiving the land for much less than the fair market value at the time of purchase. Such evidence supports Robert's assertion that the difference between the purchase price and the value of the land was intended to be a gift to him from his family so that the land could continue to be possessed and farmed by a member of the family. We note that Joan explicitly testified that this gift was not intended for Jamie and that neither of the deeds reflect that Jamie was ever an owner of the parcels. Jamie did not offer any concrete evidence to refute Robert's contention that a portion of the parcels was gifted to him by his family, outside of her generalized opinion. The district court clearly found Robert's and Joan's testimony regarding the property being a gift to Robert as credible. We do not reweigh this credibility decision on appeal. See *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014).

Gifts and inheritances, even when received during the marriage, are presumed to be nonmarital. *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019). Given the evidence presented at the dissolution trial, we cannot find plain error in the district court's finding that $1,715,000 of the value of the parcels was Robert's separate property, as it was a gift to him from his family. We note that in our review, we examined the language of the prenuptial agreement entered into by the parties. We agree with the district court that while the agreement does not compel a finding that a majority of the parcels' value was Robert's nonmarital property, it does support such a finding.

Section V of the premarital agreement addresses property acquired during the marriage by gift or inheritance. This section provides, "[I]t is the intention of the parties that any such property [gifted or inherited by one spouse] which remains titled to one party . . . shall be treated as premarital and separate property for purposes of this agreement." The two parcels were titled solely

in Robert's name and, in accordance with our analysis above, were partially gifted to Robert by his family. As such, the district court's decision that $1,715,000 of the value of the parcels was Robert's separate property comports with the premarital agreement.

## CONCLUSION

Given Jamie's failure to adhere to the appellate briefing rules in her replacement brief, we review only for plain error. Finding no plain error in the district court's decree of dissolution, we affirm.

AFFIRMED.